**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**SALOMON & LUDWIN, LLC,**

**Plaintiff,**

**v.** **Civil Action No. 3:24-cv-389**

**JEREMIAH WINTERS, *et al.*,**

**Defendants.**

**MEMORANDUM OPINION**

This matter is before the Court on eight motions:

1. Defendants Jeremiah Winters', Catherine Atwood's, Jennifer Thompson's, Abbey Sorensen's (collectively with the aforementioned, the "Individual Defendants"), and Founders Grove Wealth Partners, LLC f/k/a Albero Advisors, LLC's ("FGWP," and collectively with the Individual Defendants, the "FGWP Defendants") Motion to Dismiss Plaintiff Salomon & Ludwin, LLC's ("S&L") First Amended Complaint, (ECF No. 90);

2. Defendant Dynasty Financial Partners, LLC's ("Dynasty") Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim, (ECF No. 97);

3. S&L's Motion to Dismiss FGWP Defendants' Counterclaims, (ECF No. 125);

4. S&L's Motion to Strike Individual Defendants' Jury Demand in Answer, (ECF No. 123);

5. S&L's Motion to Strike Immaterial, Impertinent, or Scandalous Matter in Counterclaim, (ECF No. 127);

6. S&L's Motion to Disqualify Counsel, (ECF No. 164);

7. The FGWP Defendants' Motion to Seal, (ECF No. 167); and,

8. S&L's Motion to Seal, (ECF No. 173).

The parties have filed memoranda supporting their respective positions and appeared before the Court for oral argument. The Motions to Dismiss, (ECF Nos. 90, 97), are ripe for

disposition. For the reasons articulated below, the Court will grant the FGWP Defendants' Motion, dismiss S&L's claims against the FGWP Defendants without prejudice, decline to exercise supplemental jurisdiction over the state law claims against Dynasty, and deny the remaining pending motions as moot.

## I. Factual and Procedural Background

### A. Factual Background[1]

S&L is a wealth management firm formed in 2009 and based in Henrico County, Virginia. (ECF No. 86 ¶¶ 2–3.) It provides wealth management and financial services to clients in the Richmond area and across the United States. (ECF No. 86 ¶ 38.) S&L alleges that its business depends heavily on long-term client relationships, confidential client information, and patented business strategies. (ECF No. 86 ¶¶ 40–56.) According to S&L, that information is not publicly available and is safeguarded through password-protected systems and employee confidentiality obligations. (ECF No. 86 ¶¶ 46–54.)

S&L hired Winters, Atwood, Thompson, and Sorensen (the "Individual Defendants") between 2009 and 2017. (ECF No. 86 ¶ 76.) Winters and Atwood were financial advisors while Thompson and Sorensen were operational professionals. (ECF No. 86 ¶ 76.) S&L alleges that, through training, mentorship, paid certification, and licensing support, it prepared the Individual Defendants to service clients and entrusted them with confidential client information. (ECF No. 86 ¶¶ 77–80.)

---

[1] In considering the Motions to Dismiss, the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to S&L. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

### 1. **The Employment Agreements**

To protect its client relationships and proprietary information, S&L required Winters and Atwood to sign Financial Services Professional Employment Agreements (the "FSP Agreement"). (ECF No. 86 ¶¶ 57, 82; *see also* ECF Nos. 86-1, 86-2.) Likewise, S&L required Thompson and Sorensen to sign Administrative Professional Employment Agreements (the "AP Agreement"). (ECF No. 86 ¶¶ 58, 82; *see also* ECF Nos. 86-3, 86-4.) The FSP Agreement and AP Agreement contain substantially similar terms and will be referred to collectively as the "Employment Agreements."[2]

The Employment Agreements provide that S&L maintains "rights to all current and future clients, client relationships, and equity in such client relationships, as well as rights to all revenue generated from such clients[.]" (Employment Agreements § 7.) The Employment Agreements also state that, during employment and for two years after termination, the Individual Defendants may not solicit certain S&L clients, or other business relations, and may not directly or indirectly provide financial services or sell financial service products to S&L's clients. (Employment Agreements § 15.)

---

[2] Because the FSP Agreement and AP Agreement are identical in substance apart from their titles and the employment designations they use, the Court refers collectively to the two FSP Agreements filed at ECF Nos. 86-1 and 86-2 and the two AP Agreements filed at ECF Nos. 86-3 and 86-4 as the "Employment Agreements." When citing provisions common to those four agreements, the Court cites ECF Nos. 86-1 through 86-4 collectively.

Each Employment Agreement also includes, as a separate exhibit, an identical confidentiality agreement. To distinguish these sub-agreements from the Employment Agreements themselves, the Court refers collectively to those exhibits as the "Confidentiality Agreements." Specifically, the Confidentiality Agreements appear as Exhibit C to the Employment Agreements filed at ECF Nos. 86-1 and 86-2, and as Exhibit B to the Employment Agreements filed at ECF Nos. 86-3 and 86-4. When citing provisions common to the Confidentiality Agreements, the Court cites those exhibits accordingly.

The Employment Agreements define S&L's client relationships as trade secrets developed through substantial time, effort, and expense. The Agreements prohibit the Individual Defendants from disclosing or using S&L's confidential and proprietary information. (Employment Agreements §§ 7, 14–16, 18.) Most relevant here, Section 20 of each Employment Agreement provides:

> This Agreement shall be construed in accordance with and shall be governed by the laws of the Commonwealth of Virginia. Venue for any action hereon shall be in the courts of the Commonwealth of Virginia in Henrico County. The parties hereto consent to the jurisdiction of these courts.

(Employment Agreements § 20.) This forum selection clause forms the basis of the FGWP Defendants' Motion to Dismiss.

### 2. The Individual Defendants' Departure from Salomon & Ludwin and Formation of FGWP

S&L alleges that the Individual Defendants began planning their departure in December of 2023, and formed FGWP on April 1, 2024, while still employed by S&L. (ECF No. 86 ¶¶ 91, 93.) The FGWP Defendants retained Dynasty, a wealth management solutions and business services provider, to assist with FGWP's development and launch through its "20 Steps to Independence" program. (ECF No. 86 ¶¶ 94–108.) The Individual Defendants resigned from S&L on May 24, 2024. (ECF No. 86 ¶ 119.)

S&L states that the FGWP Defendants immediately contacted Salomon & Ludwin clients to announce FGWP's founding and to solicit their business using information that the Employment Agreements define as trade secrets. (ECF No. 86 ¶¶ 119–45.) Senior United States District Judge Henry E. Hudson previously found that S&L successfully showed a loss of over 100 clients and 300 million dollars in client assets. *Salomon & Ludwin, LLC v. Winters*, 741 F. Supp. 3d 398, 407 (E.D. Va. 2024). The United States Court of Appeals for the Fourth Circuit

later noted that S&L lost "over four hundred accounts representing hundreds of millions of dollars in client assets." *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 273 (4th Cir. 2025).

### B. **Procedural Background**

S&L initiated this action on May 28, 2024, filing its original Complaint and a Motion for Emergency Temporary Restraining Order. (ECF Nos. 1, 8.) The original Complaint asserted claims against the FGWP Defendants for violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), violations of the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code § 59.1-336 et seq., tortious interference with business relations, breach of duty of loyalty, breach of contract, and declaratory judgment. (ECF No. 1 ¶¶ 125–292.)

Throughout the case, the FGWP Defendants have continuously raised a jurisdictional challenge under the forum selection clause found in the Employments Agreements, including in their initial opposition to S&L's Motion for Temporary Restraining Order, (ECF No. 18, at 18–19), supplemental TRO briefing, (ECF No. 41, at 13–15), and in their Motion to Dismiss the original Complaint, (ECF No. 43, at 3–6).

On June 20, 2024, Judge Hudson entered a Temporary Restraining Order, (ECF No. 46), prohibiting the FGWP Defendants from further trade secret use or solicitation of S&L's clients. S&L then moved for a preliminary injunction, (ECF No. 47), and the FGWP Defendants opposed the preliminary injunction, again raising the forum selection clause issue. (ECF No. 52, at 30.) Without addressing the venue motion, the Court granted the preliminary injunction on July 23, 2024, (ECF Nos. 64, 65), and the FGWP Defendants appealed. (ECF No. 66.)

On August 12, 2025, the Fourth Circuit concluded that the Employment Agreements likely controlled over the Protocol for Broker Recruiting (the "Protocol")[3] as to the Individual Defendants and that S&L had shown a likelihood of success on the merits of its trade secrets claims. *Salomon & Ludwin*, 150 F.4th at 275–79. The Fourth Circuit affirmed the preliminary injunction as to the Individual Defendants and vacated it as to FGWP because FGWP was not a party to the Employment Agreements. *Id.* at 275–77.

Following the appeal and remand, S&L moved for leave to amend its Complaint to add Dynasty as a defendant and supplement its allegations. (ECF No. 75.) The FGWP Defendants opposed this Motion, again asserting the forum selection clause. (ECF No. 82.) Judge Hudson granted S&L leave to amend, denied the FGWP Defendants' original motion to dismiss as moot without attending to its merits, and invited Defendants to raise further dispositive arguments directed to the amended pleading. (ECF No. 85, at 15–16.) S&L's First Amended Complaint, (ECF No. 86), was deemed filed as of that day, August 12, 2025.

The Amended Complaint asserts the following federal and state law claims against the FGWP Defendants and state law claims against Dynasty:

**Count I:** Violations of the DTSA, 18 U.S.C. § 1836, against the FGWP Defendants;

**Count II:** Violations of the VUTSA, Va. Code § 59.1-336, *et. seq.*, against the FGWP Defendants;

**Count III:** Tortious Interference with Business Relations against all Defendants;

**Counts IV–VII:** Breach of the Duty of Loyalty against each Individual Defendant;

---

[3] The Protocol is a voluntary, industry-wide agreement among financial services firms that permits a departing financial advisor, upon compliance with specified procedures, to take certain client information when one leaves a member firm to join another and to solicit clients serviced at the former firm without subjecting the advisor or new firm to liability on that basis. *See Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 271–72 (4th Cir. 2025). S&L joined the Protocol in March of 2018. *Id.* at 272.

**Counts VIII–XI:** Breach of Contract against each Individual Defendant;

**Count XII:** Aiding and Abetting Breach of Fiduciary Duty against Dynasty;

**Count XIII:** Statutory Business Conspiracy, Va. Code § 18.2-499, against the Individual Defendants and Dynasty;

**Count XIV:** Common Law Conspiracy against the Individual Defendants and Dynasty; and,

**Count XV:** Declaratory Relief, 28 U.S.C. § 2201, against all Defendants.

(ECF No. 86 ¶¶ 147–348.)

The FGWP Defendants again moved to dismiss, raising the forum selection clause and the doctrine of *forum non conveniens*. (ECF No. 90.) Dynasty separately moved to dismiss for lack of jurisdiction and failure to state a claim. (ECF No. 97.) S&L opposes both motions. (ECF Nos. 93, 99.) While those motions remained pending, the parties submitted several additional filings, including a Counterclaim filed by the FGWP Defendants, (ECF No. 115), S&L's Motion to Dismiss the Counterclaim, (ECF No. 125), two motions to strike filed by S&L, (ECF Nos. 123, 127), a Motion to Disqualify Counsel filed by S&L, (ECF No. 164), a Motion to Seal filed by the FGWP Defendants, (ECF No. 167), and a Motion to Seal filed by S&L, (ECF No. 173). As the case is presently positioned, the Court must first determine whether S&L may continue litigating in this Court despite the forum selection clause contained in the Employment Agreements. The Court turns to that threshold issue below.

## II. Standard of Review: *Forum Non Conveniens* & Forum Selection Clauses[4]

*Forum non conveniens* permits a federal court to dismiss an action when the selected venue is highly inconvenient and an adequate alternative forum exists. *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470–71 (4th Cir. 2018). In the ordinary case, the defendant bears a heavy burden to disturb the plaintiff's chosen forum. *Id.* To carry that burden, the moving party must show that the alternative forum is available, adequate, and more convenient in light of the relevant private and public interests. *Id.* That analysis changes, however, when the parties have agreed to a valid forum selection clause that points to a state or foreign forum. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013); *BAE Sys.*, 884 F.3d at 471. In that circumstance, a valid forum selection clause should be "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (quotation omitted). Accordingly, the plaintiff's choice of forum receives no weight, the parties' private interests are deemed to favor the selected forum, and the court considers only public interest factors. *Id.* at 63–64. Because those public interest

---

[4] The FGWP Defendants also seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), and Dynasty seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). However, where—as is the case here—a forum selection clause designates a non-federal forum, "the appropriate way to enforce" that clause is through the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013); *see also BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470–71 (4th Cir. 2018).

Because the Court concludes that dismissal is warranted under the doctrine of *forum non conveniens*, the Court need not reach any alternative grounds for dismissal and therefore does not separately set forth the standards governing them. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (explaining that *forum non conveniens* constitutes a "threshold, non-merits issue" and that a district court may dismiss on that ground without first resolving subject matter jurisdiction when considerations of convenience, fairness, and judicial economy so warrant).

factors will "rarely defeat" enforcement of the parties' contractual choice, the "practical result" is that forum selection clauses ordinarily control. *Id.* at 64; *see also BAE Sys.*, 884 F.3d at 471.

## III. Analysis

The pending motions raise a threshold venue issue—whether the forum selection clause contained in the Individual Defendants' Employment Agreements requires this action to proceed in Virginia state court in Henrico County. The FGWP Defendants contend that the clause is mandatory, enforceable, and broad enough to encompass all claims asserted in the Amended Complaint. (*See* ECF No. 90.) S&L argues that the FGWP Defendants waived the defense, that the clause is permissive, and that, even if enforceable, the clause does not reach all claims or all parties. (*See* ECF No. 93.)

For the reasons set forth below, even at this late date, the Court must conclude that the FGWP Defendants did not waive their right to enforce the forum selection clause, and that the forum selection clause at issue is valid, enforceable, mandatory, and applicable to S&L's claims against the FGWP Defendants. Because the forum selection clause places the chosen forum in state court, dismissal of all claims against the FGWP Defendants under *forum non conveniens* is required. No claim within this Court's original jurisdiction will remain, and the Court will decline to sever the case and exercise jurisdiction over S&L's state law claims against Dynasty and over the FGWP Defendants' Counterclaims. Because the Court must dismiss all claims, the Court is constrained to dissolve the preliminary injunction and deny all other motions as moot.

### A. The FGWP Defendants' Motion to Dismiss

The FGWP Defendants move to dismiss under *forum non conveniens* and Rule 12(b)(6), relying on Section 20 of the Employment Agreements, which provides that "[v]enue for any action hereon shall be in the courts of the Commonwealth of Virginia in Henrico County."

(Employment Agreements § 20; ECF No. 90.) They contend that the clause is mandatory, valid, and broad enough to require dismissal of all claims in favor of Henrico County Circuit Court. (ECF No. 91, at 6–11.) S&L responds that the FGWP Defendants waived the clause, that the clause is permissive, and that it does not reach all claims or parties. (ECF No. 93, at 5–15.) The Court begins by addressing whether the FGWP Defendants waived their right to enforce the forum selection clause in the course of this litigation.

#### 1. The FGWP Defendants' Litigation in this Court Did Not Waive the Forum Selection Clause

S&L first argues that the FGWP Defendants waived the forum selection clause argument by litigating in this Court, participating in preliminary injunction proceedings, and pursuing an interlocutory appeal to the Fourth Circuit. (ECF No. 93, at 5–8.) Despite the amount of litigation undertaken in this federal court, the record cannot support that contention.

If a party wishes to raise a venue or forum-related defense, they "must do so at the time [they] make[] [their] first significant defensive move." *Xyrous Commc'ns, LLC v. Bulgarian Telecomms. Co. AD*, No. 1:09-cv-396 (LOG), WL 2877084, at *8 (E.D. Va. Sept. 4, 2009). A party may waive a contractual venue right expressly or by conduct inconsistent with an intent to enforce it. *Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 678 (4th Cir. 2018). Such a waiver requires conduct clearly demonstrating an intentional relinquishment of a known right. *Id.* Conduct with ambiguous meaning will not suffice. *Id.*

Here, the FGWP Defendants raised the forum selection clause at the first meaningful opportunity. In their first defensive pleading, in opposition to S&L's Motion for a Temporary Restraining Order—they argued that S&L's filing "violates the forum selection clauses contained in the Employment Agreements" and asked the Court to enforce those clauses. (ECF No. 18, at 18–19.) They raised the issue again in their supplemental briefing on the TRO, (ECF

No. 41, at 13–15), in their Motion to Dismiss the original Complaint, (ECF Nos. 42, 43), and in opposing S&L's request for a preliminary injunction, (ECF No. 52, at 30). The FGWP Defendants raised their venue objection in every possible defensive pleading throughout the pendency of the emergency proceedings that preceded the appeal in this case, and it was the Court's decision not to address the merits of the argument at that time.

The FGWP Defendants continued to preserve the issue after the preliminary injunction. They made a note about the forum selection clause in their opening appellate brief, (USCA No. 24-1728, Dkt. No. 28, at 1, n.1), and they raised it again immediately after the case was remanded to the District Court when opposing S&L's Motion for Leave to Amend, (*see* ECF No. 82). After Judge Hudson granted leave to amend, the FGWP Defendants filed the present Motion to Dismiss. (ECF No. 90). This record demonstrates that the FGWP Defendants have consistently pursued and preserved their objections based on the forum selection clause.

Nor did the interlocutory appeal waive the issue. At the time of appeal, Judge Hudson had yet to rule on the FGWP Defendants' forum selection clause argument contained in the original motion to dismiss. (*See* ECF Nos. 43, 64.) Generally, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). The appeal spoke to the preliminary injunction, and the forum selection clause issue was not before the Fourth Circuit to be argued or waived. Likewise, the filing of counterclaims by the FGWP Defendants does not constitute a waiver. The Counterclaims were filed pursuant to the deadline set by Judge Hudson and while the *forum non conveniens* motion remained pending. (*See* ECF No. 105.)

The filing of the Amended Complaint further undercuts S&L's waiver argument. Judge Hudson's Order granted S&L leave to amend and denied the FGWP Defendants' prior motion to

dismiss as moot "without attending to its merits," while inviting Defendants to raise or renew any dispositive issues and other defenses in a future motion directed at the amended pleading. (ECF No. 85, at 16–17.)

Additionally, an amended complaint supersedes the original complaint and renders it of "no legal effect." *Young v. City of Mount Rainier*, 238 F.3d 567, 572 (4th Cir. 2001); *see also Ohio River Valley Envtl. Coal., Inc. v. Timmermeyer*, 66 F. App'x 468, 471 (4th Cir. 2003) (after an amended complaint is filed, the original complaint "no longer performs any function in the case."). Thus, once S&L filed the Amended Complaint, the FGWP Defendants were entitled to renew their forum selection argument against the new operative pleading—and they did. (*See* ECF No. 90.)

In any event, *forum non conveniens* is a doctrine a district court may consider even where it has not been affirmatively invoked. *See AdvanFort Co. v. Zamil Offshore Servs. Co.*, 134 F.4th 760, 767–68 (4th Cir. 2025) (quoting *United States v. Moussaoui*, 483 F.3d 220, 236 (4th Cir. 2007)). The Court therefore finds no waiver of the right to assert the forum selection clause in this matter.

Because the Court must conclude that the FGWP Defendants did not waive their right to assert the forum selection clause, the Court next considers whether the clause is valid, enforceable, and mandatory.

### 2. The Forum Selection Clause is Valid, Enforceable, and Mandatory

#### a. Legal Standard: Forum Selection Clauses

Forum selection clauses are presumptively valid. The Supreme Court has instructed that "a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 59–60 (quoting *Stewart Org., Inc. v. Ricoh*

*Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). The Fourth Circuit has stated that such a clause is unreasonable only if:

> (1) its formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his [or her] day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) its enforcement would contravene a strong public policy of the forum state.

*Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010); *see also Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (applying *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15–18 (1972)).

If the forum selection clause is enforceable, the Court must then determine whether the clause is mandatory or permissive. *BAE Sys.*, 884 F.3d at 470–72 (4th Cir. 2018). A mandatory clause requires litigation in the designated forum, while a permissive clause merely allows litigation there without foreclosing other forums. *Id.* at 470. A clause is permissive unless it contains "specific language of exclusion." *Id.* at 472 (quoting *Albemarle*, 628 F.3d at 651).

If, as here, a valid and mandatory forum selection clause points to a state forum, the clause is enforced through the doctrine of *forum non conveniens*, and the Court's analysis is altered under *Atlantic Marine*. 571 U.S. at 60. The Court presumes the parties have bargained for the contractually selected forum, the plaintiff's choice of forum in violation of the contract receives no weight, private interest factors are deemed to favor the contractually selected forum, and the Court considers only public interest factors. *Id.* at 63–64. Because those factors will rarely defeat enforcement, a valid forum selection clause should control "in all but the most exceptional cases." *Id.* at 63.

**b. Enforcement of the Forum Selection Clause Would Not Be Unreasonable, Meaning the Forum Selection Clause is *Prima Facie* Valid**

None of the four factors establishing the existence of an unreasonable forum selection clause appear on this record. First, there is no allegation that the forum selection clause was procured by fraud or overreaching. In fact, S&L itself drafted the Employment Agreements and required the Individual Defendants to sign them. (ECF No. 86 ¶¶ 57–59.)

Second, S&L cannot plausibly contend that litigating in Henrico County Circuit Court would deprive it of its day in court. S&L is a Virginia limited liability company with its principal place of business in Henrico County. (ECF No. 86 ¶¶ 23–24.) FGWP's principal place of business is also in Henrico County, and the Individual Defendants are Virginia residents. (ECF No. 115 ¶¶ 1–5.) The parties and alleged conduct are centered in the precise county prescribed by the forum selection clause. (ECF No. 86 ¶ 36.) In any event, *Atlantic Marine* forecloses reliance on private inconvenience. When parties agree to a valid forum selection clause, they "waive the right to challenge the preselected forum as inconvenient." *Atl. Marine*, 571 U.S. at 64. The Court cannot weigh the usual private interest factors in S&L's favor because it bargained for a specific forum and venue when it drafted and entered into the Employment Agreements.

Third, enforcement of the forum selection clause would not deprive S&L of a remedy. Henrico County Circuit Court provides an available forum in which S&L may pursue its claims, including its federal DTSA claim. Nor does S&L identify any respect in which Virginia law—the governing law selected in the Employment Agreements—would deprive it of a remedy. (ECF Nos. 86-1–86-4 § 20.) *See Allen*, 94 F.3d at 928–30 (enforcing choice-of-forum and choice-of-law provisions where the chosen law afforded adequate remedies).

Fourth and finally, *Atlantic Marine* does allow the Court to consider public interest factors, but S&L fails to identify a strong public policy that would be contravened by enforcement. The presence of a federal DTSA claim does not invalidate a forum selection clause selecting state court. The Fourth Circuit has held that the right to a federal forum may be waived even where a plaintiff asserts federal statutory rights. *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 213–14 (4th Cir. 2007). Such is the case here. S&L has essentially waived its right to bring a claim in federal court by agreeing to—and indeed drafting—the forum selection clause at bar. The public policy favoring access to federal courts is not enough, by itself, to overcome a valid contractual forum selection clause. *Id.*

The Court nevertheless recognizes that enforcing the clause at this stage carries substantial costs. This action has been litigated in this Court for more than two years, including through emergency injunctive proceedings, extensive briefing, and an interlocutory appeal. Requiring dismissal and refiling in state court at this juncture would necessarily duplicate some of those efforts and expend additional judicial and party resources. That history gives the Court pause and presents the strongest consideration against enforcement.

But it does not make this the exceptional case contemplated by *Atlantic Marine*. S&L should not be permitted to invoke the costs and delay resulting from its choice to litigate outside the contractually selected forum from its own contract as a reason to avoid enforcement of the forum selection clause. The FGWP Defendants raised the forum selection clause from the outset of this litigation and have continued to seek its enforcement in favor of the Circuit Court for Henrico County. (*See* ECF No. 18, at 18–19; ECF Nos. 42–43; ECF No. 52, at 30; ECF No. 63, at 123:5–7; ECF No. 90.) Despite the attendant cost of dismissal and refiling after prolonged litigation, they continue to insist upon the forum selected in the Employment Agreements. By

contrast, retaining the case in this Court would relieve S&L—the party that drafted the clause and chose to file elsewhere—of the consequences of its own contractual bargain. The expenditure of resources occasioned by litigation in a forum contrary to that bargain cannot, without more, supply the exceptional circumstance necessary to defeat enforcement. *Atl. Marine*, 571 U.S. at 66 n.8 (recognizing that dismissal in favor of a contractually selected forum may carry significant consequences for a plaintiff, but explaining that dismissal "works no injustice" when those consequences follow from the plaintiff's decision to file suit in violation of a valid forum selection clause). Accordingly, the Court finds that the forum selection clause is valid and enforceable.

**c. The Forum Selection Clause in the Employment Agreement is Mandatory**

The Court next considers whether the forum selection clause is mandatory or permissive. A mandatory clause requires litigation in the selected forum. *BAE Sys.*, 884 F.3d at 470. A permissive clause merely consents to jurisdiction in a forum without excluding litigation elsewhere. *Id.*

A forum selection clause is only mandatory if it contains language denoting exclusivity. Indeed, "an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." *Albemarle*, 628 F.3d at 651. Although the word "shall" does not denote exclusivity in every case, it is significant where it specifically modifies *venue* and appears with other markers of exclusivity. *See Multiscaff Ltd. v. Aptim Fed. Servs., LLC*, No. 3:23-cv-22 (RCY), 2023 WL 5110937, at *11 (E.D. Va. Aug. 9, 2023) (emphasis added). As the Fourth Circuit has explained, "where *venue* is specified with mandatory or obligatory language, *the clause will be enforced*[.] [W]here only jurisdiction is specified, the clause will generally not be enforced unless there is some further

language indicating the parties' intent to make venue exclusive." *BAE Sys.*, 884 F.3d at 473 n.7 (collecting cases) (emphasis added).

The clause at issue provides:

> Venue for any action hereon shall be in the courts of the Commonwealth of Virginia in Henrico County. The parties hereto consent to the jurisdiction of these courts.

(Employment Agreements § 20.) This clause specifies venue, not merely jurisdiction. It provides that *venue* "shall be" in the identified courts. Even lacking words such as "only" and "sole," that constitutes mandatory language.

Moreover, the clause selects a sovereign forum. The Fourth Circuit distinguishes between geographical limitations—clauses requiring litigation "in" a state or county—and limitations on sovereignty—clauses requiring litigation in the courts "of" a state. A clause referring to a geographic location may include both state and federal courts located within that area. *See Bartels*, 880 F.3d at 674–75. In contrast, a clause referring to courts "of" a state ordinarily invokes *sovereignty*, because federal courts are not courts *of* any state. *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010); *see also Bartels*, 880 F.3d at 684–85 (Floyd, J., concurring).

The Employment Agreements require venue "in the courts *of* the Commonwealth of Virginia in Henrico County." (Employment Agreements § 20 (emphasis added).) Federal courts are not courts *of* the Commonwealth of Virginia. *FindWhere*, 626 F.3d at 755. Moreover, even if there were no sovereignty limitation, no federal courthouse sits in Henrico County. The clause therefore limits litigation exclusively to the state courts located in Henrico County, Virginia, and the Court must conclude that the forum selection clause is mandatory.

#### d. The Forum Selection Clause in the Confidentiality Agreements Does Not Render Both Forum Selection Clauses Permissive

S&L separately contends that a forum selection clause in the subordinate Confidentiality Agreements, (ECF No. 86-1), entered into with the Individual Defendants, is permissive. (ECF No. 93, at 8–11.) S&L attempts to meet its burden of permissiveness by demonstrating that this Court must harmonize the forum selection clause in the Confidentiality Agreements with the clause in the Employment Agreements by treating both as permissive. (ECF No. 93, at 8–11.) The Court is not persuaded. S&L cannot rely on the Employment Agreements as the basis for its claims in its Amended Complaint and also ask the Court to disregard the forum selection clause contained in those same agreements. Nor would any "harmonization" render the forum selection clause in the Employment Agreements permissive.

At the outset, the Amended Complaint and the Fourth Circuit's prior opinion in this case rightly focus on the Employment Agreements as the operative contracts. (ECF No. 86 ¶¶ 59–74, 81–84, 248–59, 264–75, 280–91, 296–307; *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 272–75 (4th Cir. 2025).) In fact, the Confidentiality Agreements are hardly mentioned in the Amended Complaint. It is the Employment Agreements that contain the provisions central to this case. They define the employment relationship, address clients and client relationships, state that S&L owns client relationships and related revenue, prohibit outside activities harmful to S&L, impose confidentiality and non-solicitation obligations, and identify restrictions as necessary to protect trade secrets and prevent unfair competition. (Employment Agreements §§ 3, 5, 7, 8, 12, 14–16, 25.) While trade secrets are mentioned only once in the Confidentiality Agreements among a long list of what constitutes confidential information, trade secrets are mentioned five times in the Employment Agreements and largely defined therein. (Employment Agreements §§ 14–16; Confidentiality Agreements § 2.)

Even if the Court were to consider the forum selection clause in the Confidentiality Agreements in equal measure to the forum selection clause in the Employment Agreements, the Court would conclude that harmonizing the provisions would not require the Court to render the mandatory clause of the Employment Agreements permissive. The forum selection clause in the Confidentiality Agreements reads:

> EACH PARTY CONSENTS TO THE PERSONAL JURISDICTION OF THE COURTS OF THE COMMONWEALTH OF VIRGINIA LOCATED IN HENRICO COUNTY (AND ANY CORRESPONDING APPELLATE COURT) IN ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

(Confidentiality Agreements § 4(n).) This clause is arguably permissive because it provides only that each party "CONSENTS TO THE PERSONAL JURISDICTION" of the identified Virginia courts. It does not state that an action *must* be brought in those courts, designate those courts as the exclusive forum, or otherwise prohibit litigation elsewhere. (Confidentiality Agreements § 4(n).)

But that distinction does not create a conflict between the two provisions.[5] The Confidentiality Agreements are most sensibly read as consenting to jurisdiction in the exclusive forum selected by the Employment Agreements. A provision consenting to jurisdiction in one forum and a clause selecting an exclusive venue can coexist where both speak to the same forum. The former establishes the parties' submission to a court's authority, and the latter dictates the only proper forum. Nothing in the Confidentiality Agreements supersedes, contradicts, or

[5] *Five Points Sarasota Investors LLC v. Investec Bank PLC*, on which S&L relies, does not suggest otherwise. No. 8:22-cv-2912, 2023 WL 2071463, at *3–4 (M.D. Fla. Feb. 17, 2023). There, the court confronted forum selection provisions that pointed to different forums. One provision addressed venue in Sarasota County, while another agreement designated courts in New York and England as permissible. *Id.* at *3. Treating the Sarasota County provision as mandatory therefore would have rendered the latter provision meaningless. *Id.* Here, by contrast, the two provisions identify the same forum.

negates the mandatory clause in the Employment Agreements. Reading these provisions as S&L suggests would contradict the plain meaning of the Employment Agreements. Accordingly, the Employment Agreements supply the governing forum selection clause, and that clause remains mandatory.

### 3. Each of S&L's Claims Falls Within the Scope of the Forum Selection Clause

Having determined that the clause is valid, enforceable, and mandatory, the Court must now evaluate which claims fall within its scope. The clause states that it applies to "any action hereon." (Employment Agreements § 20.) S&L argues that the clause should be construed narrowly because the phrase "any action hereon" reaches only actions brought directly on the Employment Agreements themselves. (ECF No. 93, at 11–14.) On that basis, S&L contends that the clause encompasses only its breach of contract claims, and not its independent statutory and tort claims arising from the same underlying conduct or employment relationships. (ECF No. 93, at 11–14.) The Court does not find this definition of "*any* action hereon" persuasive. The word "any" is expansive, not limiting, and ordinarily means "all" or "every" within the scope of the term it modifies.

The term "hereon" in this context is more aptly defined as "on this basis, matter, or subject." *Hereon*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Morales v. Fast RX, Inc.*, No. 2:19-CV-14411, 2019 WL 7374579, at *3 (S.D. Fla., Dec. 30, 2019). Thus, the clause applies to claims which are based on the matter or subject of the Employment Agreements.

Put differently, "hereon" performs the same relational function as phrases such as "relating to" or "arising from." It asks whether the legal action is based on the matter or subject of the agreement, not whether contract law supplies the cause of action. *Morales* is particularly instructive. There, interpreting the identical phrase "[a]ny action hereon," the court expressly

considered whether "hereon" differed in scope from "relating to or arising from" and concluded that it did not. *Morales*, 2019 WL 7374579, at *3. Because "hereon" means "on this basis, matter, or subject," the court held that the clause extended beyond breach of contract claims to statutory claims based on the employment relationship created by the contract. *Id.* Thus, the relevant inquiry here is whether each claim rests on the basis, matter, or subject governed by the Employment Agreements, regardless of the legal label S&L attaches to the claim.[6]

**a. The Breach of Contract Claims Arise "Hereon" the Employment Agreements**

The clause "any action hereon" plainly applies to the breach of contract claims against the Individual Defendants. Counts VIII through XI allege that each Individual Defendant breached the Employment Agreements. (ECF No. 86 ¶¶ 248–59, 264–75, 280–91, 296–307.) Any action constituting an instance of breach is an action taken "hereon" the contracts.

**b. The DTSA and VUTSA Claims Are Based on the Employment Agreements**

The trade secret claims under the DTSA (Count I) and the VUTSA (Count II) also fall within the scope of the "any action hereon" clause. These claims concern alleged misuse of trade secrets, including client information and other proprietary information that the Individual Defendants received through their employment. That information is specifically identified in the Amended Complaint. (ECF No. 86 ¶¶ 46–54 (cataloging client and proprietary information),

[6] S&L's reliance on *Ross v. King's Creek Plantation, LLC* does not compel a narrower construction. There, the forum selection clause applied to "all legal proceedings relating to the subject matter of the contract." 2015 WL 13854910, at *3–4 (E.D. Va. Dec. 8, 2015). Although the wording differs, the operative concept does not. "Relating to the subject matter" asks whether a claim bears the requisite connection to the contract's subject matter; "hereon," as *Morales* explains, asks whether the action is "on th[e] basis, matter, or subject" of the contract. *Morales*, 2019 WL 7374579, at 3. The absence of the words "relating to" therefore does not restrict "any action hereon" to a cause of action for breach of contract.

80–84, 142–78.) The Employment Agreements address those same categories of information and state that S&L's client relationships "are trade secrets that [S&L] has developed through great time, effort, and expense." (Employment Agreements § 16.) Notably, the breach of contract counts themselves identify the alleged trade secret misappropriation as instances of breach. (ECF No. 86 ¶¶ 253, 260–61, 269, 276–77, 285, 292–93, 301, 308–09.) The DTSA and VUTSA claims are based on the subject of proprietary an confidential information defined by the Employment Agreements.

**c. The Tortious Interference Claim Are Based On the Employment Agreements**

The tortious interference claim (Count III) are likewise based on the subject matter of under the Employment Agreements. Count III alleges interference with S&L's business relationships and expectancies with clients serviced by the Individual Defendants. (ECF No. 86 ¶¶ 189–97.) Client relationships are central to the Employment Agreements. The Employment Agreements address S&L's ownership of client relationships, the employees' obligations concerning those relationships, and the restrictions on post-employment solicitation. (Employment Agreements §§ 3, 5, 7, 15, 16.) Again, the breach of contract counts necessitate this finding, as it is explicitly alleged that the same interfering conduct constituted breaches of the Employment Agreements. (ECF No. 86 ¶¶ 250, 260, 266, 276, 282, 292, 298, 308.)

**d. The Duty of Loyalty Claims Are Based On the Employment Agreements**

Counts IV through VII, which allege breach of the duty of loyalty by the Individual Defendants, are also based on the Employment Agreements. (ECF No. 86 ¶¶ 201–44.) S&L alleges that the Individual Defendants owed duties by virtue of their employment, misused access and information obtained through their employment, and acted against S&L while still

employed. (ECF No. 86 ¶¶ 201–44.) The Employment Agreements establish the employment relationships, govern client relationships, restrict outside activity, and include non-solicitation obligations. (Employment Agreements §§ 7, 8, 12, 15.) Those precise allegations of the Individual Defendants' bad-faith use of S&L's proprietary information to further their own interests and compete against S&L again undergird the factual basis for S&L's breach of contract counts. (ECF No. 86 ¶¶ 255–58, 271–74, 287–90, 303–06.)

#### e. **The Conspiracy and Declaratory Judgment Claims Are Based on the Employment Agreements**

Counts XIII and XIV, which allege statutory and common law conspiracy, fare no differently. Those claims based on the alleged trade secret misappropriation, interference with client relationships, breaches of loyalty, and breaches of contract already discussed. (ECF No. 86 ¶¶ 327–41.) Count XV, which seeks declaratory relief, likewise clearly flows from the same alleged conduct and is duplicative of the other claims. (ECF No. 86 ¶¶ 342–48.) These counts are grounded in the same factual predicates as the claims reviewed above, meaning they are governed by the forum selection clause.

#### f. **FGWP Is Also Bound by the Forum Selection Clause**

Further, the Court cannot separate the claims against the Individual Defendants from the claims against FGWP because FGWP is sufficiently intertwined with the Employment Agreements so as to be bound by the forum selection clause as well.

S&L argues that the forum selection clause cannot bind FGWP because FGWP never signed the Employment Agreements. (ECF No. 93, at 14–16.) S&L emphasizes that the Fourth Circuit previously vacated the preliminary injunction as to FGWP on the ground that FGWP was not a party to those Agreements and contends that FGWP's relationship with the Individual Defendants does not justify extending the contractual forum selection clause to it. (ECF No. 93,

at 14–16; *see also Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 275–77 (4th Cir. 2025).) But the Fourth Circuit's analysis was limited to the application of a preliminary injunction to a non-signatory of a contract, which arises under a different standard.

In the context of a forum selection clause, a non-signatory may invoke or be bound by a forum selection clause where the claims against it are closely related to the contract. *See Bartels*, 880 F.3d at 678–79 ("[W]ell established common law principles . . . may bind a non-signatory to a contractual clause executed by a third party."). Here, FGWP was formed by the Individual Defendants as the vehicle for their alleged misconduct and benefited from the purported misuse of S&L's trade secrets and client relationships. (ECF No. 86 ¶¶ 15–20, 90–124, 142–97.) The claims against FGWP are inseparable from the alleged conduct of the Individual Defendants and the contractual restrictions S&L seeks to enforce. It would make little sense to enforce the clause as to the Individual Defendants while retaining in this Court the same claims against the company they formed to allegedly carry out the same conduct.

Accordingly, the Court concludes that S&L's claims against the Individual Defendants and FGWP are based on the matter or subject of the Employment Agreements. The claims therefore arise "hereon" those Agreements and fall within the scope of the forum selection clause.

**4. <u>The Selected Forum is Available</u>**

The Court may enforce a forum selection clause only if the selected forum can hear the claims. *See Atl. Marine*, 571 U.S. at 60–66. The Court sees two potential obstacles: (1) the possible running of limitations periods, and (2) whether a Virginia state court may hear a federal DTSA claim. In this instance, neither bars enforcement of the forum selection clause.

**a. The Applicable Statutes of Limitation Likely Do Not Render the Selected Forum Unavailable**

As to the first potential obstacle, potential concerns regarding the running of any statutes of limitation[7] do not defeat dismissal. In an ordinary *forum non conveniens* analysis, dismissal may raise concerns because a plaintiff may lose its claim if the limitations period has run in the alternative forum.[8] *See Norwood v. Kirkpatrick*, 349 U.S. 29, 31–32 (1955). *Atlantic Marine*, however, makes clear that such caution is not warranted where a plaintiff violates a contractual

---

[7] The applicable limitations periods are as follows:

(1) Three years for S&L's DTSA and VUTSA claims (Counts I and II), 18 U.S.C. § 1836(d); Va. Code § 59.1-340;

(2) Five years for tortious interference (Count III), Va. Code § 8.01-243(B); *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 321 (2014);

(3) Two years for breach of fiduciary duty (Counts IV–VII), Va. Code § 8.01-248; *Plumbers & Steamfitters Union Local No. 10 v. Waters*, 451 F. Supp. 3d 543, 550–51 (E.D. Va. 2020);

(4) Five years for breach of a written contract (Counts VIII–XI), Va. Code § 8.01-246(A)(2); and,

(5) Five years for conspiracy claims alleging injury to business or property (Counts XIII–XIV), Va. Code § 8.01-243(B); *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 93 (4th Cir. 2019).

[8] Because the conduct underlying S&L's claims principally occurred in May of 2024, the two-year limitations period applicable to the duty of loyalty claims presents the only apparent concern if S&L were required to file a new action now. Regardless, *Atlantic Marine* forecloses treating any resulting limitations problem as a basis for declining to enforce the forum selection clause. *See Atl. Marine*, 571 U.S. at 66 n.8.

Moreover, it appears that Virginia's tolling statute may preserve those claims because it excludes the period during which a timely filed action was pending before being "dismissed without determining the merits." Va. Code § 8.01-229(E)(1); *see Welding, Inc. v. Bland Cnty. Serv. Auth.*, 541 S.E.2d 909, 910–12 (2001) (applying § 8.01-229(E)(1) after a federal action was dismissed without prejudice pursuant to a forum selection clause and refiled in state court). But the Court does not decide that issue here.

obligation by filing in a forum other than the one selected in a valid forum selection clause. *Atl. Marine*, 571 U.S. at 66 n.8. In that circumstance, "dismissal would work no injustice on the plaintiff." *Id.* Here, S&L—the plaintiff and a signatory to the Employment Agreements—commenced this action in a forum other than the one it selected by the contract it drafted. Any potential limitations bar therefore supplies no basis to decline enforcement of that contractual choice of forum.

**b. Virginia State Courts May Adjudicate DTSA Claims**

As to the second potential obstacle, Virginia state courts may adjudicate DTSA claims. Under our system of dual sovereignty, state courts are presumptively competent to adjudicate claims arising under federal law. *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990); *Tafflin v. Levitt*, 493 U.S. 455, 458–60 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981). That presumption may be overcome only if Congress affirmatively ousts state courts of jurisdiction through "an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state court jurisdiction and federal interests." *Tafflin*, 493 U.S. at 459; *see also Bullock v. Napolitano*, 666 F.3d 281, 285 (4th Cir. 2012); *Wade v. Blue*, 369 F.3d 407, 410 (4th Cir. 2004); *Brandenburg v. Seidel*, 859 F.2d 1179, 1193 (4th Cir. 1988).

None of those considerations rebuts the presumption of state court competency here. First, the text of the DTSA does not expressly vest exclusive jurisdiction in the federal courts. It provides only that "[t]he district courts of the United States shall have *original* jurisdiction of civil actions brought under this section." 18 U.S.C. § 1836(c). Original jurisdiction is not exclusive jurisdiction. As the Supreme Court has instructed, the mere grant of jurisdiction to federal courts does not divest state courts of concurrent authority. *Tafflin*, 493 U.S. at 459–61;

*Yellow Freight*, 494 U.S. at 823. The United States Court of Appeals for the Second Circuit recently applied that same principle to the DTSA, holding that "the text of the DTSA does not state nor even suggest that jurisdiction shall be exclusive in the federal courts." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. IBM*, 110 F.4th 106, 116 (2d Cir. 2024).

Second, the legislative history of the DTSA does not show a congressional intent to make federal jurisdiction exclusive. To the contrary, Congress removed prior "*exclusive* original jurisdiction" language from 18 U.S.C. § 1836 in 2016 and replaced it with the present grant of *original* jurisdiction. *Id.* at 116–17. Although some legislative history around the DTSA reflects a preference for federal courts in light of the interstate nature of trade secret disputes, such a preference does not amount to an affirmative or unmistakable command that jurisdiction be exclusively federal. *Id.* at 117.

Third, concurrent state court jurisdiction over DTSA claims is not incompatible with federal interests. The DTSA complements, rather than displaces, state trade secret law (such as the VUTSA claim in the present case), and concurrent jurisdiction over such claims does not create any unusual risk of inconsistent application of federal law beyond that already inherent in our multi-court federal system. *Id.* at 118. Many district courts have reasoned that a state court may hear a DTSA claim.[9] And state courts throughout the country have exercised jurisdiction

---

[9] *See AA Med. P.C. v. Almansoori*, No. 20-cv-3852, 2023 WL 7688688, at *16 (E.D.N.Y. Oct. 4, 2023); *Preferred Freezer Servs., LLC v. Americold Realty Tr.*, No. 19-cv-2926, 2020 WL 774132, at *3 n.5, *4 (S.D.N.Y. Feb. 18, 2020); *Xpo GF Am., Inc. v. Qiuheng Liao*, No. 19-4173, 2019 WL 8226077, at *4 (C.D. Cal. Sept. 27, 2019); *Allstate Ins. Co. v. Jewell*, No. 17-cv-140, 2019 WL 3526703, at *4 (W.D. Ky. May 21, 2019); *1-800 Remodel, Inc. v. Bodor*, No. 18-cv-472, 2019 WL 856399, at *2, n.3 (C.D. Cal. Jan. 28, 2019); *G4S Secure Integration LLC v. EX2 Tech., LLC*, No. 17-cv-4277, 2017 WL 3441407, at *5 (N.D. Ill. July 19, 2017).

over DTSA claims.[10] This Court therefore agrees with the Second Circuit's reasoning in *Beijing Neu Cloud* and finds that state courts have concurrent jurisdiction to adjudicate DTSA claims.

Henrico County Circuit Court is an available, adequate, and convenient forum for S&L's DTSA claim and related state law claims. Henrico County is not some remote or unfamiliar tribunal for these parties. As previously stated, S&L is a Virginia limited liability company with its principal place of business in Henrico County, FGWP likewise has its principal place of business in Henrico County, and the Individual Defendants are Virginia residents. (ECF No. 86 ¶¶ 2–3; ECF No. 115 ¶¶ 1–5.) The selected forum is not merely adequate as a matter of jurisdiction. It is the local forum chosen by the parties' contracts and is closely connected to the parties, witnesses, and events at issue. This Court sees no reason to disturb the parties' contractual choice of forum.

#### 5. The Court Will Dismiss S&L's Claims Under the Doctrine of *Forum Non Conveniens*

When a forum selection clause necessitates that a case be heard elsewhere, the proper procedural mechanism depends on the forum selected by the contract. A forum selection clause pointing to another federal forum is enforced through 28 U.S.C. § 1404(a), but a forum selection clause pointing to a state or foreign forum is enforced through the doctrine of *forum non conveniens*. *Atl. Marine*, 571 U.S. at 60–61; *BAE Sys.*, 884 F.3d at 470.

The clause here explicitly names the Virginia state court in Henrico County. (Employment Agreements § 20.) Transfer to Henrico County Circuit Court, however, is not

[10] *See, e.g.*, *C3.Ai Inc. v. Cummins, Inc.*, No. N23C-11-106, 2024 WL 4025788 (Del. Super. Ct., Sept. 3, 2024); *BIOMILQ, Inc. v. Guiliano*, No. 22-255, 2024 WL 1698061 (N.C. Super. Ct., Apr. 19, 2024); *Nev. Indep. v. Whitley*, 138 Nev. 122 (2022); *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 20-7165, 2021 WL 2530984 (N.C. Super. Ct., June 18, 2021); *Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346 (Tex. App. 2018).

available to this federal court. Although 28 U.S.C. § 1404(a) permits transfer to another federal district or division, the Supreme Court has explained that the statute "speaks to federal courts" and serves only to permit transfer from one federal forum to "a more convenient federal court." *Pope v. Atl. Coast Line R. Co.*, 345 U.S. 379, 384 (1953). The Court finds no statutory provision or other authority permitting it to transfer this action to state court. *See Schmidt v. Big Boy*, No. CIV. 05-5036, 2006 WL 8453938, at *3 (D.S.D. Oct. 19, 2006) (collecting cases). Dismissal without prejudice, rather than transfer, is therefore the appropriate remedy. *Atl. Marine*, 571 U.S. at 66, n.8; *Norwood*, 349 U.S. at 31–32. Because dismissal under *forum non conveniens* resolves the Amended Complaint as to the Individual Defendants and FGWP, the Court does not reach their alternative Rule 12(b)(6) arguments.

**B. <u>Dynasty's Motion to Dismiss</u>**

Dynasty separately moves to dismiss S&L's claims for lack of jurisdiction and failure to state a claim. (ECF Nos. 97, 98.) Dynasty is not named in the DTSA claim, which is the only federal cause of action in the First Amended Complaint. (ECF No. 86 ¶¶ 142–56.) Thus, the only possible basis for jurisdiction over Dynasty is supplemental jurisdiction under 28 U.S.C. § 1367. Section 1367(c)(3) provides that a district court may decline supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." Once the Court dismisses the DTSA claim and S&L's related claims under the doctrine of *forum non conveniens*, no claim within this Court's original jurisdiction remains. The claims against Dynasty are state law claims, which raise issues of Virginia tort and conspiracy law and arise from the same nucleus of facts that will proceed, if at all, in the contractually selected state forum. (ECF No. 86 ¶¶ 189–97, 310–34.) Such claims should not be severed from the case and litigated in this Court after the core claims are dismissed.

The Court declines to exercise supplemental jurisdiction over S&L's claims against Dynasty and will dismiss those claims without prejudice. Because the Court declines supplemental jurisdiction, it does not reach Dynasty's Rule 12(b)(6) arguments.

### C. FGWP Defendants' Counterclaim and S&L's Motion to Dismiss the Counterclaim

The FGWP Defendants assert Counterclaims against S&L for breach of the Protocol, tortious interference, breach of the Employment Agreements, defamation, and rescission or reformation. (ECF No. 115 ¶¶ 89–147.) These are state law claims and do not independently supply federal jurisdiction. Retaining jurisdiction over the Counterclaims would be inconsistent with the same considerations that warrant dismissal of the Amended Complaint. The Counterclaims arise from the same employment relationships, client relationships, contractual provisions, and departure-related conduct that will proceed, if at all, in the contractually selected state forum. The Court will therefore dismiss the Counterclaims without prejudice. Because the Court dismisses the Counterclaims on jurisdictional and *forum non conveniens* grounds, it does not reach S&L's Rule 12(b)(6) arguments, and S&L's Motion to Dismiss the Counterclaims, (ECF No. 125), will be denied as moot.

### D. Motions to Seal

The FGWP Defendants move to seal select portions of an exhibit filed in connection with a discovery dispute because those portions contain confidential business information designated "Attorneys' Eyes Only" under the Protective Order. (ECF Nos. 167, 168.) S&L likewise moves to seal two exhibits accompanying its Reply in Support of its Motion to Disqualify Counsel, which contain excerpts from the depositions of FGWP's and Dynasty's corporate representatives concerning sensitive business information. (ECF Nos. 173, 174.)

Because these materials were filed in connection with a discovery dispute and a motion to disqualify counsel, rather than a dispositive motion, the common law right of access applies. *See Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). Under that standard, the Court may seal judicial records when competing interests outweigh the public's right of access. *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Before doing so, the Court must provide public notice and an opportunity to object, consider less drastic alternatives, and state specific reasons supporting sealing. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000).

Those requirements are satisfied here. The publicly filed sealing motions provided notice of the sealing requests and an opportunity to object. The requests are narrowly tailored to limited portions of the record containing nonpublic, commercially sensitive information concerning the parties' internal business operations and communications. The Court has considered less drastic alternatives and concludes that none would adequately protect those interests while preserving public access to the remainder of the record. The parties' interest in protecting this confidential commercial information outweighs the public's interest in access to the limited materials at issue. Accordingly, the Court will grant the FGWP Defendants' Motion to Seal, (ECF No. 167), and S&L's Motion to Seal, (ECF No. 173). The materials identified in those Motions will remain sealed until further order of the Court.

**E. <u>Remaining Motions</u>**

S&L's Motion to Strike the Individual Defendants' Jury Demand, (ECF No. 123), and S&L's Motion to Strike Immaterial, Impertinent, or Scandalous Matter in the Counterclaim, (ECF No. 127), speak to pleadings that will no longer remain pending before this Court. The

Court will deny these motions as moot. Likewise, because this action will be dismissed without prejudice, S&L's Motion to Disqualify Counsel, (ECF No. 164), will be denied as moot.

### F. The Preliminary Injunction

One issue remains. Judge Hudson previously entered a preliminary injunction, (ECF No. 65), which the Fourth Circuit affirmed in part as to the Individual Defendants. *See Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268 (4th Cir. 2025). The preliminary injunction was entered to preserve the status quo during litigation in *this* Court. Because the Court will dismiss this action in favor of the contractually selected state forum, any request for ongoing injunctive relief must be presented to that forum. This Court is therefore constrained to dissolve the preliminary injunction upon entry of the accompanying Order.

## IV. Conclusion

For the foregoing reasons, the Court will grant the FGWP Defendants' Motion to Dismiss, (ECF No. 90), under the doctrine of *forum non conveniens* and dismiss S&L's claims against the Individual Defendants and FGWP without prejudice. The Court will also grant Dynasty's Motion to Dismiss, (ECF No. 97), to the extent it asks the Court to decline supplemental jurisdiction and dismiss S&L's claims against Dynasty without prejudice. The Court will dismiss the FGWP Defendants' Counterclaims, (ECF No. 115), without prejudice. The Court will grant the FGWP Defendants' Motion to Seal, (ECF No. 167), and S&L's Motion to Seal, (ECF No. 173). The Court will dissolve the preliminary injunction, (ECF No. 65), and will deny the remaining pending motions, (ECF Nos. 123, 125, 127, 164), as moot.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
Chief United States District Judge

Date: 9/28/26
Richmond, Virginia